INDEPENDENT BREWERIES COMPANY, Appellant, v. J. H. and M. J. LAWTON (Defendants); F. W. EVANS and G. L. McCULLOUGH (Interpleaders), Respondents.

Springfield Court of Appeals, June 25, 1918.

FRAUDULENT CONVEYANCES: Bulk Sales Law: Billiard and Pool Business. The sale of a billiard and pool hall business, including tables, cues, racks, and other usual equipment, is not within the Bulk Sales Law, requiring notice to creditors, etc.; the act being intended to protect creditors selling merchandise for resale.

Appeal from Jasper Circuit Court.—*Hon. D. E. Blair*, Judge.

AFFIRMED.

*Jno. T. Fitzsimmons* and *Mercer Arnold* for appellant.

*Hugh Dabbs* and *Walden & Andrew* for respondents.

FARRINGTON, J.—The Lawtons (defendants), who conducted a billiard and pool hall business in Joplin, Mo., sold it to F. W. Evans and G. L. McCullough (interpleaders), the respondents herein. The plaintiff (appellant) was a creditor of the Lawtons, who were indebted to it at the time of the sale. There was no attempt by either defendant or the interpleaders to comply with the provisions of the "Bulk Sales Law" of Missouri enacted in 1913 (Sess. Laws 1913, p. 163.) Within ninety days after the sale the plaintiff brought this suit against the Lawtons for the debt and sued out a writ of attachment which was levied on the billiard and pool tables and fixtures and equipment—that is, on the tables, cues, racks, balls, chairs, and usual equipment of a billiard hall, which levy included a small stock of cigars and the show case in which the cigars were displayed. It was shown that the license to run the billiard hall and the license to sell the cigars were independent and separate. The court heard the evidence and found for the interpleaders except as to the cigars and show case. No complaint of this ruling as to the cigars and show case is made by the respondents.

Counsel on both sides have commendably narrowed the question actually for decision by this court to the one proposition, to-wit: Does the sale of a billiard and pool hall business, including the tables, cues, racks, balls, chairs and usual equipment, fixtures and paraphernalia going with a billiard and pool hall, fall with-

in the provisions of and become governed by the bulk sales law which requires, in order for certain sales of goods, wares and merchandise in bulk to be valid, so far as creditors are concerned, that notice be given to creditors and other requirements met which are specified in the law.

The title of the act reads: "An act to regulate the sale, trade or other disposition of the major part in value or the whole of a stock of merchandise, or merchandise, fixtures and equipment, or equipment pertaining to the vendor's business, otherwise than in the ordinary course of trade and the regular prosecution of the vendor's business, . . . ."

Section 1 of the act reads, in part, as follows: "The sale, trade or other disposition of the major part in value or the whole of a stock of merchandise, or merchandise, fixtures and equipment, or equipment pertaining to the vendor's business, otherwise than in the ordinary course of trade and in the regular prosecution of the vendor's business, whether in one or more parcels or to one or more persons, provided the transfer is all part of substantially one transaction or proceeding or occurs substantially at one time, shall be fraudulent and void as against all creditors of the vendor, unless the vendee . . ." etc.

We hold that this law is applicable only to sales made by those carrying on a mercantile business—that is, merchants who buy goods, wares and merchandise as a business for the purpose of re-selling, and that the act is broad enough to cover the goods and all fixtures and equipment pertaining to the vendor's business which were incident to and used in connection with the sale of the goods. As we held in the case of Joplin Supply Co. v. Smith, 182 Mo. App. 212, 167 S. W. 649, the purpose of the bulk sales law is to prevent a trader who is indebted from disposing of his merchandise and fixtures in a manner otherwise than in the regular course of business unless he complies with the requirements of the act. It is the sale or trade or disposition of the articles mentioned in the act

otherwise than in the ordinary course . of trade and in the regular prosecution of the vendor's business that is prohibited unless the requirements are met. The act does not cover, in terms or by implication, a sale or trade or disposition of a business that is not carried on for the purpose of selling or disposing of goods, wares and merchandise.

The bulk sales law of Missouri is similiar to and intended to cover the same scope and purposes as the acts of other States relating to this subject, and while perhaps no two of the acts are drawn in exactly the same language and no two of them include all the same property yet all are designed to regulate the sale of the merchandise of a merchant in bulk, and the act of Missouri has included in the regulation such property as the vendor or merchant or trader owns and uses in connection with and incident to the sale of his goods, wares and merchandise. We cite the following cases as sustaining the construction we have placed on the act under consideration, and, as before stated, while it may be said that the acts under which these cases were decided were not as broad, perhaps, or do not include all that the Missouri act includes, yet the general purpose of the acts is the same and the cases are applicable. [Neas v. Borches (Tenn.), 71 S. W. 50; McDaniels v. J. J. Connelly Shoe Co. (Wash.), 71 Pac. 37; Walp v. Lamkin & Foster (Conn.), 57 Atl. 277; Lemieux v. Young (Conn.), 8 A. & E. Ann. Cas. 452, 211 U. S. 489, 53 L. Ed. 295; John P. Squire & Co. v. Tellier (Mass.), 69 N. E. 312; Nash Hardware Co. v. Morris (Texas), 146 S. W. 874; Musselman Gro. Co. v. Kidd, Dater & Price Co. (Mich.), 115 N. W. 409; Gallus v. Elmer, 193 Mass. 106, 8 A. & E. Ann. Cas. 1067, 78 N. E. 772; and Everett Produce Co. v. Smith, 40 Wash. 566, 5 A. & E. Ann. Cas. 798, 82 Pac. 905.]

Our attention has been called to the case of W. B. Parham & Co. v. Potts-Thompson Liquor Co. (Ga.), 56 S. E. 460, in which it was held that the act covered

pool tables but wherein it was shown that they were used in a barroom and that they facilitated the operation of the business and the sale of the goods connected therewith, which holding is not out of line with the construction we have placed on the Missouri act. The Supreme Court of Georgia in the case of Cooney, Eckstein & Co. v. Sweat, 133 Ga. 501, 66 S. E. 253, expressly holds that the sale of substantially all the lumber manufactured by one who operates a sawmill does not fall within the bulk sales law regulating the sale of goods, wares and merchandise, and the opinion states that the object of the Legislature in passing the act was to protect persons who had extended credit to merchants.

Under the Michigan act, which covers the sale, transfer or assignment in bulk of a stock of merchandise, or merchandise and fixtures pertaining to the conducting of such business, it was held that the sale or transfer of horses, wagons, harness, coal bags, etc., used in the coal business, where there was no coal or merchandise sold, did not fall within the bulk sales law. [Bowen v. Quigley, 165 Mich. 337, 130 N. W. 690.] That court also held in the case of People's Saving Bank v. Van Allsburg, 165 Mich. 524, 131 N. W. 101, that the bulk sales law did not apply to the sale of the furniture and fixtures and utensils used in the operation of a restaurant where it was not shown that a merchandise business was conducted in connection therewith. [See, also: Johnson v. Kelly (N. Dak.), 155 N. W. 683; and Swanson v. De Vine (Utah), 160 Pac. 872, holding that the act does not apply to the sale of the business of a shoemaker.] It is held in Stewart v. Sulger, 161 N. Y. Supp. 489, that the bulk sales law does not apply to a hotel keeper in selling the furniture and fixtures of a hotel. [See, also: G. S. Johnson Co. v. Beloosky, 263 Ill. 363, 105 N. E. 287.]

In the April, 1918, number of the St. Louis Law Review (Vol. III, No. 1, p. 39), the question under

consideration is discussed in an ably written article in which many of the authorities referred to herein are cited, and the conclusion of the writer of that article is that the Missouri act does not include sales by vendors other than those engaged in the business of re-selling.

The Supreme Court of Montana in the case of Ferrat v. Adamson, 163 Pac. 112, held that the act did not include property covered in a sale made of a billiard hall, because, as pointed out in the opinion, the articles which the vendor kept in his business were kept for use and not for sale or disposition. We think the same reasoning applies under the Missouri statute, and that that part of our act reading, "or equipment pertaining to the vendor's business" is confined to a vendor of a stock of goods, wares and merchandise, and that said clause was not intended to embrace and include the sale of all kinds and character of property. The act of Missouri was intended to protect creditors who sell to merchants or traders articles of merchandise for re-sale and the act has included for their protection not only the goods, wares and merchandise but such fixtures and equipment as is connected with and incident to and used in carrying on the business of re-selling the goods, wares and merchandise. The judgment of the trial court is clearly in accord with this construction of the law and it is therefore affirmed. *Sturgis P. J.,* and *Bradley, J.,* concur.